*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BICKMANN, Minors.

UNPUBLISHED
November 14, 2024
2:31 PM

No. 370883
Otsego Circuit Court
Family Division
LC No. 22-000067-NA

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating his parental rights to his minor children, DB and CB, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse to child or sibling), (j) (reasonable likelihood of harm if returned to parent), and (k)(*v*) (parent abused child or sibling and abuse included life-threatening injury). The trial court's termination of respondent's parental rights to CB is not contested on appeal. Rather, respondent contends that the trial court clearly erred by relying solely on the doctrine of anticipatory neglect as a basis for terminating his parental rights to DB. We affirm.

## I. BACKGROUND

The substantive allegations are uncontested. CB was hospitalized with life-threatening injuries sustained while she was in respondent's care. Specifically, CB had suffered respiratory failure requiring ventilation, chronic and acute damage to her brain including multiple hemorrhages, and retinal hemorrhaging. CB was diagnosed with "non-accidental trauma." Respondent was charged with one count of second-degree child abuse, MCL 750.136b(3), and one count of fourth-degree child abuse, MCL 750.136b(5).

---

[1] The petition in this case did not name the children's mother as a respondent and the mother is not a party to this appeal. Accordingly, we simply refer to respondent-father as "respondent" and non-respondent mother as "the mother."

-1-

The Department of Health and Human Services filed a petition to remove respondent from the home of the children's mother and to terminate his parental rights to both children. The petition alleged that CB sustained serious, nonaccidental injuries while in respondent's care, which resulted in criminal charges against respondent. The petition further alleged that respondent had his parental rights to two other children terminated because of physical neglect. Respondent waived the probable-cause determination, and the petition was authorized.

For the purpose of jurisdiction, respondent entered a no-contest plea to the allegations that he had used excessive force when bouncing CB on his knee, causing life-threatening injuries and requiring her hospitalization. The trial court accepted respondent's plea. Based on respondent's plea, medical reports, and police records, the trial court found by a preponderance of the evidence that it had jurisdiction over the children under MCL 712A.2(b)(1) and (2).

At the termination hearing, the trial court took judicial notice that respondent had pleaded guilty to fourth-degree child abuse related to his care of CB and was awaiting sentencing.[2] Dr. Nancy Simms, a child abuse pediatrician, was qualified as an expert in pediatrics with a specialty in child abuse and neglect. Dr. Simms testified that CB had a number of medical interactions in the two weeks preceding her hospitalization for life-threatening injuries in November 2021. In the 16 days leading up to CB's hospitalization for respiratory failure, CB experienced vomiting, weight loss, irritability, and weakness in her head and shoulders. CB had a number of medical interactions in that two-week period leading up to her hospitalization. It was determined that CB was in respondent's care before each medical interaction during that two-week period. At the time of her hospitalization, CB had evidence of both chronic and acute damage to her brain that showed a "progression of some type of anoxic event that caused areas of the brain to basically die." CB also had significant retinal hemorrhaging in all three layers of her eyes, which was indicative of nonaccidental trauma. Dr. Simms opined within a reasonable degree of medical certainty that CB's injuries resulted from an inflicted injury.

The caseworker testified that respondent had two prior cases involving other children. Respondent failed to participate in the services offered to him in those prior cases, and prior attempts to rehabilitate respondent were not successful. Respondent voluntarily released his parental rights to the other children in 2012.

The caseworker further testified that, at the time of the hearing, both children's needs were being met in the care of the mother. The caseworker opined that CB did not have a bond with respondent, and DB's bond with respondent was "very minor", because of their young ages and the case history. Although respondent had sent the caseworker proof that he has completing online parenting courses, the caseworker opined that returning CB to respondent's home presented "a continued risk of harm" because respondent had "not shown that he's been able to care for the child, due to the current child abuse charge, . . . the past terminations, and the failure for him not [sic] to participate in services during two previous foster care cases." The caseworker opined that DB would also be at risk of harm if he were returned to respondent's home because

---

[2] The judgment of sentence was ultimately admitted into the lower court record. Defendant was sentenced to one years' imprisonment, with credit for two days served.

-2-

the concerns that involve [CB], what can be done to one child can, also, be done to the—to the other . . . through the investigation, these are not just minor injuries . . . this was a life-significant injury to a child, and what can be done can, also, happen to another. Especially, if a parent becomes frustrated, angry, upset. These are all still major concerns of what could still potentially happen if the children were returned back to [respondent's] care.

\* \* \*

it falls down to . . . what has happened in this investigation. What can happen to one child is reasonably likely that it could happen to another. Again, the lack of participation in the prior two cases that [respondent] had in Crawford County, to assist him with developing parenting skills, and appropriate parenting, and so forth. Being that was not complied with. Through the investigation . . . and through the interviews, we were able to determine that each of these incidences occurred while the child was in [respondent's] car[e], as we were able to find that [the mother] was at work when these concerns were happening. This is very concerning, as [a] potential injury that could still occur again.

Following respondent's sentencing for his fourth-degree child abuse conviction, the trial court concluded there was clear and convincing evidence that respondent's parental rights to the children should be terminated under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*v*), and that termination was in the children's best interests. Respondent now appeals.

## II. ANALYSIS

Respondent contends that the trial court clearly erred by terminating his parental rights to DB because there was no evidence that he abused or neglected DB. Respondent argues that the trial court erroneously relied upon the doctrine of anticipatory neglect in speculating that respondent posed a risk of harm to the children.. We disagree.

## A. STATUTORY GROUNDS

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). In this case, the trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*v*). Respondent does not identify what statutory grounds were erroneously found by the trial court. Regardless, if at least one statutory ground for termination is established, "we need not

consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

We conclude that the record supports the trial court's finding that clear and convincing evidence exists for terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*). A trial court may terminate a parent's rights to a child if it finds by clear and convincing evidence that the parent caused physical injury to a sibling of the child, and there is a reasonable likelihood that the child will suffer from abuse in the foreseeable future if placed in the parent's home. MCL 712A.19b(3)(b)(*i*). The trial court found that CB suffered new and old nonaccidental injuries and a life-threatening injury for which respondent admitted responsibility. The court also found that respondent had not demonstrated benefit from services before voluntarily releasing his parental rights to his other children. The record supports these findings.

The trial court further found that there was a reasonable likelihood, based on the nonaccidental life-threatening injury respondent inflicted on CB, that the children would be harmed if returned to respondent because "[h]ow you treat one child is evidence of how you would or could treat the other." Respondent argues that no evidence was presented demonstrating that he abused or neglected DB, and that the trial court erred by applying the doctrine of anticipatory neglect. This argument is unpersuasive. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re MOTA*, 334 Mich App 300, 323; 964 NW2d 881 (2020). "In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The doctrine may also "militate in favor of termination" of parental rights. See *In re LaFrance*, 306 Mich App 713, 730; 858 NW2d143 (2014). "Abuse or neglect of the second child is not a prerequisite for . . .application of the doctrine of anticipatory neglect." *In re Kellogg*, 331 Mich App at 259 (cleaned up). Rather, the "doctrine inherently acknowledges that no actual detrimental act [to the second child] has occurred." *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021).

In determining whether there was clear and convincing evidence to support termination of respondent's parental rights to DB under MCL 712A.19b(3)(b)(i), the trial court was required to determine that "a *sibling* of the child has suffered physical injury[,]" the respondent's "act caused the physical injury[,]" and "there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in [respondent]'s home." The trial court's finding that DB's sibling, CB, suffered new and old nonaccidental injuries and a life-threatening injury for which respondent admitted responsibility was supported by the record evidence, and the trial court appropriately considered respondent's responsibility for CB's life-threatening injuries when determining that there was a reasonable likelihood that DB would be harmed in the foreseeable future if placed in respondent's home. We are not left with a definite and firm conviction that the trial court made a mistake by finding clear and convincing evidence supported termination respondent's parental rights to DB under MCL 712A.19b(3)(b)(*i*).

Because the trial court did not err by holding that statutory grounds for termination had been proven under MCL 712A.19b(3)(b)(*i*), we need not address its holding regarding statutory grounds for termination under MCL 712A.19b(3)(j) or (k)(*v*). *Foster*, 285 Mich App at 633. We conclude, however, that the trial court did not err by finding that the same clear and convincing

evidence also demonstrated that termination of respondent's parental rights under MCL 712A.19b(3)(j) and (k)(*v*) was warranted.

## B. BEST INTERESTS

Respondent also contends that there was an insufficient factual basis from which to make a proper best-interests determination. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43.

Here, a preponderance of the evidence in the record supports that termination was in DB's best interests. The caseworker testified that DB's bond with respondent was "very minor" because of DB's young age and the case history. As time had passed, DB no longer talked about respondent. At the time of the termination, respondent was to begin a sentence of one year's imprisonment for his conviction of fourth-degree child abuse. The trial court determined that termination of respondent's parental rights was in DB's best interests because of the length of time it would take before DB could return home and the series of incidents that led to jurisdiction. The trial court expressly acknowledged that DB was placed with his mother and was doing well in her care. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in DB's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel